1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                         **DISTRICT OF ARIZONA**

8    CHARLES W. CAMPBELL,                    NO. CV05-1278 PHX DGC

9                    Plaintiff,              **ORDER**

10   vs.

11   DIRK L. HUBBARD, STEPHEN
     JENKINS, LOWELL FINSON, JOHN
12   KLAMANN, COURTNEY HUESER,

13                    Defendants.

14

15        Pending before the Court are Defendants Hubbard, Klamann, and Hueser's motion

16   to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), (2),

17   (3), (4), and (5), Plaintiff's motion to dismiss party Lowell W. Finson, and Defendant Lowell

18   Finson's motion to dismiss.  Docs. ##8, 9, 22, 24, 25.   On December 12, 2005, the Court

19   granted Plaintiff's request for additional time to respond to new evidence raised in

20   Defendants' reply in support of their motion to dismiss.  Doc. ##35, 37, 39.  For the reasons

21   set forth below, the Court will grant Plaintiff's motion to dismiss Defendant Lowell W.

22   Finson and grant Defendants Hubbard, Klamann, and Hueser's motion to dismiss for lack

23   of personal jurisdiction.[1]

24   _____

25   [1] The Court will deny the request for oral argument because the parties have submitted
     memoranda thoroughly discussing the law and evidence and the Court concludes that
26   oral argument will not aid its decisional process.  *See Mahon v. Credit Bur. of Placer
     County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

**Factual Background**

On April 29, 2005, Plaintiff, an Arizona resident, filed a complaint against two Kansas attorneys, two Missouri attorneys, and one Arizona attorney based on the Court's diversity jurisdiction under 28 U.S.C. § 1332.  Doc. # 1.  Plaintiff now requests that the Court dismiss the claim against the Arizona attorney.  Doc. #22.  Plaintiff alleges that the non-resident attorneys were negligent in their handling of Plaintiff's age discrimination case brought in Kansas.  Doc. #33.  Plaintiff specifically alleges Kansas legal malpractice, violations of the Kansas Consumer Protection Act, fraud, constructive fraud, and breach of fiduciary duties. Doc. #4.

On September 28, 2005, three of the four named Defendants moved to dismiss for lack of personal jurisdiction.  Doc. #8.  Two of the moving Defendants, Courtney Hueser and John Klamann, claim to have never met Plaintiff or had any involvement in his underlying case.[2]  Doc. #33 at 1.  Defendant Hubbard admits he entered "into a representation contract with Plaintiff in Kansas to bring Kansas and federal-based claims in the United States District Court for the District of Kansas," but alleges that  Plaintiff's subsequent move to Arizona was purely fortuitous and not in any way the result of Mr. Hubbard's "purposefully availing" himself of the laws of Arizona. *Id.*

Plaintiff responds that personal jurisdiction over the named defendants is proper because Hubbard knew that he was "entering into a contract with a client who would be a permanent resident of Arizona."  Doc. # 28 at 9.  To show Hubbard's knowledge, Plaintiff states that eleven days after signing the contract in Kansas he "dropped off documents to

---

[2] Plaintiff disputes that Defendant Hueser had no involvement in his case.  He has provided the Court with evidence she made an entry of appearance in Kansas for Defendant Hubbard on May 4, 2004, to request document production in Plaintiff's Kansas case.  Doc. #40.  This evidence does not alter the Court's final determination of the present case.

1   Hubbard on his way to the airport, from where he flew to Arizona." *Id.* Plaintiff further

2   asserts that Klamann, a law partner of Hubbard, and Hueser, co-counsel in Plaintiff's

3   underlying case, are liable because they "evaded their responsibilities to plaintiff by

4   ignoring Hubbard's negligent omissions of not advancing Plaintiff's claim, and thereby

5   intentionally causing injury to Plaintiff in Arizona." *Id.* at 10.

6                                  **Discussion**

7   **I.    Diversity Jurisdiction.**

8        The Court has diversity jurisdiction over cases between citizens of different states

9   involving claims greater than $75,000.  *See* 28 U.S.C. § 1332(a)(1).  The Court will grant

10  Plaintiff's request to dismiss the Arizona attorney Lowell W. Finson.  Doc. #22.  The

11  remaining Defendants are residents of Kansas and Missouri and are completely diverse

12  from Plaintiff, an Arizona resident.  Plaintiff's complaint makes a demand for damages in

13  excess of $75,000. Doc. #1. Diversity jurisdiction exists in this case.

14  **II.   Personal Jurisdiction Principles.**

15       **A.    Plaintiff's burden of proof.**

16       The plaintiff bears the burden of establishing personal jurisdiction.  *See, e.g.,*

17  *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995).  The plaintiff is obligated

18  to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction over

19  the defendant. *Cummings v. W. Trial Lawyers Assoc.*, 133 F. Supp.2d 1144, 1151 (D. Ariz.

20  2001).

21       Because no statutory method for resolving the personal jurisdiction issue exists, the

22  district court determines the method of its resolution.  *See Data Disc, Inc. v. Sys. Tech.*

23  *Assocs.,* 557 F.2d 1280, 1285 (9th Cir. 1977) (citing *Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939)).

24  A district court may allow discovery to help it determine whether it has personal jurisdiction

25  over a defendant.  *Id.* at 1285 n.1.  A district court may also hear evidence at a preliminary

26

                                      3

1   hearing to determine jurisdiction. *Id.* at 1285 n.2. At such a hearing, the plaintiff must

2   establish the jurisdictional facts by a preponderance of the evidence. *Id.* at 1285. If the

3   district court does not hear testimony or make findings of fact and instead permits the

4   parties only to submit written materials, the plaintiff must make a prima facie showing of

5   jurisdictional facts to defeat the defendant's motion to dismiss. *Omeluk v. Langsten Slip*

6   *& Batbyggeri A/S*, 52 F.3d 267, 268 (9th Cir. 1995). Under this prima facie burden of proof,

7   the plaintiff need only establish facts, through admissible evidence, that if true would

8   support personal jurisdiction over the defendant. *See Ballard v. Savage*, 65 F.3d 1495, 1498

9   (9th Cir. 1995). If the plaintiff survives the motion to dismiss under a prima facie burden of

10  proof, however, the plaintiff still must prove the jurisdictional facts by a preponderance of

11  the evidence at a preliminary hearing or at trial. *Data Disc*, 557 F.2d at 1285 n.2.

12      In analyzing Defendants' motion to dismiss, the Court has considered Plaintiff's (1)

13  complaint, (2) Plaintiff's response to Defendants' motion to dismiss, and (3) Plaintiff's

14  newly submitted supplemental response to Defendant's motion to dismiss. The Court has

15  also considered the following materials: (4) the Defendant's motion to dismiss and reply,

16  including the attached exhibits; (5) the affidavits of Courtney A. Hueser, John Klamann, and

17  Dirk L. Hubbard. Because the Court has permitted the parties to submit only written

18  materials, Plaintiff must make only a prima facie showing of jurisdictional fact to defeat

19  Defendants' motion to dismiss. *See, e.g. Omeluk,* 52 F.2d at 267.

20      **B.      Personal Jurisdiction.**

21      Because no applicable federal statute governing personal jurisdiction exists,

22  Arizona's long-arm statute applies to this case. *See Terracom v. Valley Nat'l Bank*, 49 F.3d

23  555, 559 (9th Cir. 1995); Ariz. R. Civ. P. 4.2(a). Absent traditional bases for personal

24  jurisdiction (i.e., physical presence, domicile, and consent), the Due Process Clause requires

25  that nonresident defendants have certain "minimum contacts" with the forum state such

26

4

1   that the exercise of personal jurisdiction does not offend traditional notions of fair play and

2   substantial justice.  *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The Due

3   Process Clause protects a defendant's "liberty interest in not being subject to the binding

4   judgments of a forum with which he has established no meaningful 'contacts, ties or

5   relations.'"  *Omeluk*, 52 F.3d at 269-70 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S.

6   462, 471-72 (1985)).  "By requiring that individuals have 'fair warning that a particular

7   activity may subject [them] to the jurisdiction of a foreign sovereign,' the Due Process

8   Clause 'gives a degree of predictability to the legal system that allows potential defendants

9   to structure their primary conduct with some minimum assurance as to where that conduct

10  will and will not render them liable to suit.'"  *Id.* at 270 (quoting *Burger King*, 471 U.S. at 472

11  (internal citations omitted)).

12      "In determining whether a defendant had minimum contacts with the forum state such

13  that the exercise of jurisdiction over the defendant would not offend the Due Process

14  Clause, courts focus on 'the relationship among the defendant, the forum, and the

15  litigation.'"  *Brink v. First Credit Resources*, 57 F. Supp. 2d 848, 860 (D. Ariz. 1999) (quoting

16  *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).  If a court determines that a defendant's

17  contacts with the forum state are sufficient to satisfy the Due Process Clause, then the

18  court must exercise either "general" or "specific" jurisdiction over the defendant.  *See*

19  *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-15 nn.8-9 (1984); *Ziegler*,

20  64 F.3d at 473.  The nature of the defendant's contacts with the forum state will determine

21  whether the court's jurisdiction is general or specific.  *Id.*

22          **1.      General Jurisdiction.**

23      A court may assert general jurisdiction over a defendant if the defendant's activities

24  in the state are substantial or continuous and systematic, even if the cause of action is

25  unrelated to those activities.  *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*,

26

5

1   784 F.2d 1392, 1396 (9th Cir. 1986)); *see Data Disc*, 557 F.2d at 1287 (citing *Perkins v.*

2   *Benguet Consol. Mining Co.*, 342 U.S. 437, 446-47 (1952)).  Plaintiff does not contend that

3   Defendants have such contacts with Arizona.

4               **2.       Specific Jurisdiction.**

5       Specific jurisdiction exists when a defendant's contacts with a state give rise to the

6   claims asserted.  The Ninth Circuit applies a three-part test: whether (1) the defendant

7   purposefully availed himself of the privileges of conducting activities in the forum, thereby

8   invoking the benefits and protections of its laws, or purposely directs conduct at the forum

9   that has effects in the forum; (2) the claim arises out of the defendant's forum-related

10  activities; and (3) the exercise of jurisdiction is reasonable because it comports with notions

11  of fair play and substantial justice.  *See, e.g., Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,

12  223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417

13  (9th Cir. 1997)); *Burger King*, 471 U.S. at 472-76.

14              **a.  "Purposeful Availment" and "Effects" Tests.**

15       In discussing specific jurisdiction, the United States Supreme Court emphasized long

16  ago that "it is essential in each case that there be some act by which the defendant

17  purposefully avails itself of the privilege of conducting activities within the forum State,

18  thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235,

19  253 (1958) (emphasis added).  More recently, the Supreme Court has held that a court may

20  also have specific jurisdiction over a defendant where the intended effects of the

21  defendant's non-forum conduct were purposely directed at and caused harm in the forum

22  state.  *Calder v. Jones*, 465 U.S. 783, 788-90 (1984) (adopting "effects test" for libel, invasion

23  of privacy, and intentional infliction of emotional distress claims where defendant's Florida

24  conduct had "effects" in California, the forum state); *see Sinatra v. Nat'l Enquirer*, 854 F.2d

25  1191, 1195 (9th Cir. 1988) ("[T]he decisions of this court have interpreted the holdings of

26

6

1  *Calder* and *Burger King* as modifying the purposeful availment rubric to allow 'the exercise

2  of jurisdiction over a defendant whose only 'contact' with the forum is the 'purposeful

3  direction' of a *foreign* act having *effect* in the forum state.'") (quoting *Haisten*, 784 F.2d at

4  1397) (emphasis in original).

5       Consistent with this precedent, the Ninth Circuit has held that a district court should

6  apply different specific jurisdiction tests to contract and tort cases. *See Ziegler*, 64 F.3d at

7  473; *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) (stating that in determining

8  whether court has specific jurisdiction over defendant, "[i]t is important to distinguish

9  contract from tort actions").  In cases involving certain types of torts, the Ninth Circuit has

10  held that courts should apply the "effects test" and that "jurisdiction may attach if an out-

11  of-forum defendant merely engages in conduct aimed at, and having an effect in, the situs

12  state." *Ziegler*, 64 F.3d at 473 (applying effects test because section 1983 claim "is more

13  akin to a tort claim than a contract claim"); *see Caruth v. Int'l Psychoanalytical Ass'n*, 59

14  F.3d 126, 128 n.1 (9th Cir. 1995) (applying effects test to defamation, tortious interference

15  with business relations, and intentional infliction of emotional distress claims); *Core-Vent*,

16  11 F.3d at 1486 (libel); *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1259

17  (9th Cir. 1989) (defamation and tortious interference with contract).[3]

18       In cases arising out of contractual relationships, including those involving related

19  tort claims, the Ninth Circuit applies the "purposeful availment" test enunciated in *Hanson*,

20  which "requires that the defendant engage in some form of affirmative conduct allowing or

21  promoting the transaction of business within the forum state.  This focus on the

22  defendant's affirmative conduct is designed to ensure that the defendant is not haled into

23

24  [3] *See also Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998)
   (applying effects test because trademark infringement and unfair competition case was
   akin to tort case); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087

25  (9th Cir. 2000) (declaratory judgment action involving trademark infringement).

26                       7

1    court as the result of random, fortuitous, or attenuated contacts." *Gray & Co. v.*

2    *Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citation omitted); *see Roth*, 942

3    F.2d 617, 621 (9th Cir. 1991) (applying purposeful availment test in breach of contract

4    action); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 817 (9th Cir. 1988) (finding effects test

5    inapplicable and stating that, "unlike *Calder* and *Haisten*, in this case personal jurisdiction

6    is sought on a contract claim, not on a tort claim."). A defendant has engaged in affirmative

7    conduct and thereby "purposely availed himself of the benefits of a forum if he has

8    deliberately 'engaged in significant activities within a State or has created 'continuing

9    obligations' between himself and the residents of the forum." *Gray*, 913 F.2d at 760

10   (quoting *Burger King*, 471 U.S. at 475-76); *see Cybersell*, 130 F.3d at 417 (stating that "the

11   'purposeful availment' requirement is satisfied if the defendant has taken deliberate action

12   within the forum state or if he has created continuing obligations to forum residents")

13   (citing *Ballard*, 65 F.3d at 1498).

14        "A contract alone does not automatically establish the requisite minimum contacts

15   necessary for the exercise of personal jurisdiction. 'Prior negotiations and contemplated

16   future consequences, along with the terms of the contract and the parties' actual course of

17   dealing' are the factors to be considered. The foreseeability of causing injury in another

18   state is not a sufficient basis on which to exercise jurisdiction." *Gray*, 913 F.2d at 760

19   (quoting and citing *Burger King*, 471 U.S. at 474, 478-79).

20        Finally, in analyzing the purposeful availment requirement, the Ninth Circuit performs

21   a qualitative evaluation of the defendant's contact with the forum state to determine

22   whether the "'defendant's conduct and connection with the forum [s]tate are such that he

23   should reasonably anticipate being haled into court there.'" *Core-Vent*, 11 F.3d at 1484

24   (quoting *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *see Thos. P.*

25   *Gonzales Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1252

26

8

1   (9th Cir. 1980) (stating that "it is not the quantity, but rather the 'nature and quality' of the

2   defendant's activities which determine whether extension of jurisdiction offends due

3   process").

### b. "Arising out of" Requirement.

5   The Ninth Circuit has adopted a "but for" test for determining whether a plaintiff's

6   cause of action arises out of a defendant's forum related activities.  *See Omeluk*, 52 F.3d at

7   271.  The "arising out of" requirement is met if, but for the contacts between the defendant

8   and the forum state, the cause of action would not have arisen.  *See Terracom*, 49 F.3d at

9   561.  In *Shute v. Carnival Cruise Lines*, the Ninth Circuit reasoned that:

> The 'but for' test is consistent with the basic function of the 'arising out of'
> requirement – it preserves the essential distinction between general and
> specific jurisdiction.  . . . The 'but for' test preserves the requirement that
> there be some nexus between the cause of action and the defendant's
> activities in the forum.

13   897 F.2d at 385.

### c. Reasonableness Requirement.

15   An unreasonable exercise of jurisdiction violates the Due Process Clause even if the

16   "purposeful availment" and "arising out of" requirements of the specific jurisdiction test

17   are satisfied.  *See Int'l Shoe*, 326 U.S. at 316 (1945); *Ziegler*, 64 F.3d at 474-75.  A district

18   court presumes, however, that its exercise of jurisdiction over a defendant is reasonable if

19   the first two requirements of the specific jurisdiction test are met.  *See Ballard*, 65 F.3d at

20   1500.  If the first two requirements are satisfied, then the burden of proof shifts and the

21   defendant  must "'present a compelling case that the presence of some other considerations

22   would render jurisdiction unreasonable.'"  *Id.* (quoting *Burger King*, 471 U.S. at 477).

23   The Ninth Circuit considers seven factors when determining whether the exercise of

24   specific jurisdiction over a defendant is reasonable.  *See Ziegler*, 64 F.3d at 475 (citing

25   Terracom, 49 F.3d at 561); *Worldwide Volkswagen*, 444 U.S. at 292.  These factors will be

26

1  discussed below.

2  **III.     Personal Jurisdiction Analysis**

3         **A.     Plaintiff's Showing that the Court has Specific Jurisdiction**

4                **1.     Purposeful Availment.**

5         This case arises out of a contractual relationship in which Defendant Hubbard

6  agreed to represent Plaintiff in an age discrimination complaint.  Docs. ##1-3.  Although

7  Plaintiff's complaint purports to state four tort claims, Defendants' alleged malpractice,

8  fraud, constructive fraud, and violations of fiduciary duties all arise out of the contract.

9  Accordingly, the Court must apply the purposeful availment test in determining whether

10 it has specific jurisdiction.  *See e.g., Gray*, 913 F.2d at 760 (applying the purposeful

11 availment test in cases involving the sale of used filters where plaintiff brought an action

12 for breach of warranty, recision, and misrepresentation).

13        To determine whether Defendants deliberately engaged in significant activities in

14 Arizona, thereby purposefully availing themselves of the benefits and protections of its

15 laws, the Court must evaluate four factors: (1) the parties' contract negotiations, (2) the

16 future consequences contemplated by the contract, (3) the terms of the contract, and (4) the

17 parties' actual course of dealing.  *Id.*  Plaintiff does not dispute that he initiated the first

18 contact between the parties – that Hubbard did not solicit Plaintiff's business.  Doc. #33.

19 Contract negotiations occurred in Kansas.  Docs. ## 28, 33. On October 25, 2000, Plaintiff,

20 then a Kansas resident, signed a contract with Hubbard in Kansas.  Doc. #28.  Hubbard

21 testified that he was not aware Plaintiff intended to relocate permanently to Arizona.  Doc.

22 #33, Ex. B, ¶6.  In addition, never during the parties' course of dealings did any Defendant

23 travel to or solicit business in Arizona. *Id.* at ¶ 7, 8.

24        Plaintiff argues that because Hubbard  "intentionally and purposefully" entered into

25 a contract with an Arizona resident, it was known that any injury to Plaintiff would result

26
                                        10

1   in litigation in Arizona.  Doc. #28.  Plaintiff reasons that Hubbard should have know that

2   he was moving to Arizona permanently because he "dropped off documents to [him] on his

3   way to the airport, from where he flew to Arizona." *Id.*  Moreover, Hubbard knew, or

4   should have known, that he was domiciled in Arizona because Hubbard called him

5   numerous times in Arizona to discuss his pending age discrimination case and accepted a

6   check for attorney fees from Arizona. *Id. at 14-15.*  Plaintiff argues that Hubbard's law

7   partners Klamann and Hueser should also be liable because "all partners are liable for

8   partnership obligations."  Doc. #30.   Because Klamman and Hueser "elected to conduct

9   business, and to make money, in [this] partnership," Plaintiff argues, "they also agreed to

10   be . . . liable for a tortuous wrong or a contractual breach committed within the scope, or

11   apparent scope of the agency by one of its members." *Id.*

12         "The law is clear, [however], that a contract alone is not sufficient to establish

13   purposeful interjection into the forum state." *Burger King*, 471 U.S. at 478; *see FDIC*, 828

14   F.2d at 1443.  Moreover, Defendants' "foreseeability of causing injury in [Arizona] is not

15   a sufficient basis on which to exercise jurisdiction." *Gray*, 913 F.2d at 760.  The Court finds

16   that there was no purposeful activity by Defendant Hubbard, let alone his law partners

17   Hueser and Klamann, to invoke the benefits and protections of Arizona's laws.  They did

18   not target Plaintiff as an Arizona resident, they never traveled to Arizona, and they never

19   solicited business in Arizona.  At the time the Hubbard-Campbell contract was formed,

20   Plaintiff was a Kansas resident.  The fact that Plaintiff later moved to Arizona was

21   "fortuitous, not purposeful." *FDIC*, 828 F.2d at 1443.  The first prong of the specific

22   jurisdiction test is not satisfied.

23         **2.     "Arising out of" Requirement.**

24         Plaintiff cannot show that but for Defendants' contact with Arizona the alleged harm

25   would not have occurred.  Defendants' Arizona actions did not give rise to the alleged

26

1  harm.   Defendants never traveled to Arizona, never practiced law in Arizona, and never
2  solicited business here.   Doc #33.   The second prong of the specific jurisdiction test is not
3  satisfied.

4              **3.       "Reasonableness" Requirement.**

5          An unreasonable exercise of personal jurisdiction violates due process.   *See Int'l*
6  *Shoe*, 326 U.S. at 316; *Ziegler*, 64 F.3d at 474-75.   Because Plaintiff has not shown
7  purposeful availment, a presumption of reasonableness does not apply.   *See Cummings*,
8  133 F.Supp.2d at 1154.   As noted above, the Ninth Circuit considers seven factors to
9  determine whether the exercise of specific jurisdiction is reasonable.

10         First, "[t]he degree to which a defendant interjects himself into the [forum] state
11 affects the fairness of subjecting him to jurisdiction."  *Data Disc*, 557 F.2d at 1288.  Because
12 Defendants Hubbard, Klamann, and Hueser's contact with Arizona was based solely on the
13 unilateral move of Plaintiff, this factor weighs heavily in Defendants' favor.

14         Second, the Court considers the burden on Defendants litigating in Arizona.   *See*
15 *Ziegler,* 64 F.3d at 475.   Defendants, who have no contacts with Arizona, would be
16 burdened by litigating here.   Plaintiff, now an Arizona resident, would equally be burdened
17 by litigating in Kansas.   "Where the burdens are equal, this factor tips in favor of the
18 defendant because the law of personal jurisdiction is 'primarily concerned with defendant's
19 burden.'" *Id.*  This factor weighs in Defendants' favor.

20         Third, the Court considers any conflict with the sovereignty of Kansas.  *Id.*  Because
21 the alternative forums – Arizona and Kansas – are within the United States, "any conflicting
22 sovereignty interest are best accommodated through choice-of-law rules rather than
23 jurisdictional rules."  *Gray*, 913 F.2d at 761.   Accordingly, this factor does not favor either
24 party.

25         Fourth, Arizona's interest in the dispute is considered.  *See Ziegler,* 64 F.3d at 475.

26

1   Arizona's interest in adjudicating this dispute is not particularly great because the action

2   arises out of a contractual relationship formed in Kansas and Kansas law governs.  *See*

3   *Raffaele v. Compagnie Generale Maritime*, 707 F.2d 395, 399 (9ᵗʰ Cir. 1983) ("The court most

4   competent to interpret the applicable law should normally try the case.").   On the other

5   hand, Arizona does maintain a strong interest in providing an effective means of redress

6   for its residents who are tortiously injured.  *See Data Disc*, 557 F.2d at 1288.  This factor

7   weighs slightly in Plaintiff's favor.

8        Fifth, the Court must evaluate the most efficient judicial resolution.  *See Ziegler,* 64

9   F.3d at 475.  Courts evaluate judicial efficiency by looking to "where the witnesses and the

10  evidence are likely to be located."  *Teracom,* 49 F.3d at 561.  The contractual agreement and

11  allegedly negligent conduct of Defendants all occurred in Kansas.  Doc. # 28.  Witnesses

12  and evidence of negligence will be located primarily in Kansas.  This factor weighs in

13  Defendants' favor.

14       Sixth, Plaintiff bears the burden of proving the unavailability of an alternative forum.

15  *See Core-Vent*, 11 F.3d at 1490.  Plaintiff has not met this burden.  This factor therefore

16  weighs in Defendants' favor.

17       Seventh, the Court considers the convenience and effectiveness of relief.  "A mere

18  preference on the part of [the plaintiff] for its home forum does not affect the balancing."

19  *Cummings*, 133 F.Supp.2d at 1159.  Both parties assert that they would be inconvenienced

20  if forced to litigate outside their forum, and Plaintiff has not shown that Arizona relief would

21  be more effective than that offered by the courts of Kansas.  This factor does not weigh in

22  favor or either party.

23       A majority of these factors favor Defendants.  Exercising specific jurisdiction over

24  Defendants would therefore be unreasonable under the Due Process Clause and Plaintiff

25  has failed to satisfy the third prong of the specific jurisdiction analysis..

26

13

**IV.   Conclusion.**

Plaintiff fails to satisfy any of the three requirements for specific personal jurisdiction.  General personal jurisdiction is not available.   The Court accordingly will grant Defendant's motion to dismiss for lack of personal jurisdiction.

**IT IS ORDERED**:

1.   Defendants' Motion to Dismiss Case for Lack of Jurisdiction (Doc. #8) is **granted**.

2.   Defendant Courtney Hueser's Joinder in Defendants Hubbard and Klamann's Motion to Dismiss (Doc. #9) **is granted.**

3.   Plaintiff's motion to dismiss party Lowell W. Finson (Doc. #22) is **granted.**

4.   Defendant Finson's Motion to Dismiss Party Lowell W. Finson (Doc. #24) is **denied as moot**.

5.   Motion to Dismiss Case for Lack of Jurisdiction (Reasserted) (Doc. #25) is **denied as moot.**

DATED this 11th day of January, 2006.

David G. Campbell
United States District Judge

14